IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

  vs.                             **Case No. 08-40010-01-RDR**

ROBERT THOMAS JOHNSON,

        Defendant.

## O R D E R

This case is before the court upon defendant's second motion for reconsideration of this court's denial of a motion to suppress. Doc. No. 113. This case arose from a traffic stop during which methamphetamine was allegedly found in defendant's vehicle at approximately 1:50 a.m. on August 19, 2007. The government asserts that a dog sniff performed at approximately 1:30 a.m. in a casino parking lot provided the probable cause for the traffic stop, which occurred on a highway a short distance from the casino. Defendant has sought to suppress the evidence obtained from his vehicle. The original motion to suppress was filed when defendant was represented by counsel. Defendant is now representing himself, although he is incarcerated pending trial. His main claim in support of the motion for reconsideration is that there was no dog sniff and, thus, no probable cause for the traffic stop. The court has already denied defendant's first pro se motion for reconsideration. Doc. No. 90. The second motion raises numerous

issues, many of which have been raised in other motions. Additional factual background is set forth in the court's order denying the original motion to suppress. Doc. No. 35.

The court has conducted a status conference and a hearing where additional evidence was introduced upon the motion for reconsideration. The court shall address the issues raised in defendant's motion, which shall be denied for the reasons which follow.

### Ineffective assistance of counsel

Defendant claims this court should reconsider the suppression motion because his prior counsel failed to adequately investigate plaintiff's contention that there was no dog sniff. Defendant has failed to show that additional investigation would prove that there was no dog sniff. As the court will explain later in this order, the court believes the preponderance of the evidence demonstrates that a dog sniff was conducted. Additional investigation done by or on behalf of defendant fails to show otherwise.

Defendant also criticizes his former counsel for failing to call defendant as a witness at the suppression hearing. Defendant indicates that he would have testified that he left the casino at about the time of the alleged dog sniff and that he did not see the officers or the dog around his vehicle. This testimony would not have overcome the testimony of two tribal police officers (Officer Besenyi and Officer Hurla) that there was a dog sniff. At most,

defendant's proposed testimony would have led the court to believe that the timelines of the various witnesses were not exactly correct.

In addition, defendant contends that his former counsel should have called witnesses who would have testified regarding the coverage of the surveillance cameras for the casino parking lot. This testimony would not have been material, however, because no recordings of the night in question were preserved. The court has twice authorized subpoenas for such recordings - once when defendant was represented by counsel. Nothing has been produced.

Defendant further asserts that his counsel should not have asked the tribal police officers questions regarding the surveillance cameras. But this testimony was not material to the court's decision upon the motion to suppress. Therefore, any error by counsel was not prejudicial to defendant.

Defendant also contends that an investigation by counsel would have proven that video recordings of the parking lot would have been preserved if the drug dog had actually been deployed on the night in question. He has offered no proof for this contention.

Ineffective assistance of counsel claims are governed by the standards in Strickland v. Washington, 466 U.S. 668 (1984). It must be shown both that counsel's performance was deficient and that the deficient performance prejudiced the defense. Wiggins v. Smith, 539 U.S. 510, 521 (2003). "Deficient performance" is proven

by demonstrating that counsel's performance "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. "Prejudice" is proven by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

Defendant has not demonstrated that his counsel performed deficiently. Nor has defendant demonstrated a reasonable probability that a different decision would have been reached upon the motion to suppress absent his former counsel's alleged deficient performance. As the court will discuss in more detail later in this order, after providing defendant with additional opportunities to present evidence and arguments, a preponderance of the evidence shows that there was probable cause for searching defendant's vehicle on the night in question.

Denial of discovery

Although defendant's main claim is that there was no drug dog sniff, defendant argues that reconsideration is necessary because he has been denied necessary discovery regarding the drug dog's performance on the date of and prior to the date of defendant's arrest. The court has ordered the production of any video or paper record of the drug dog's deployment in connection with defendant's arrest. To this extent, defendant overstates the limits on the

discovery ordered in this case. Of course, if the video recordings or paper records do not exist, they cannot be produced. Training and certification records have also been provided, and the dog's handler (Officer Hurla) has been the subject of cross-examination regarding the dog's training and record. The testimony at the suppression hearing was that this dog was certified less than three months before defendant was arrested and had a 90% accuracy rate in 14 deployments prior to defendant's arrest.

The court has not ordered the production of records of the drug dog's deployments prior to the date of defendant's arrest. This is consistent with the order in U.S. v. Lambert, 351 F.Supp.2d 1154, 1162 (D.Kan. 2004). Defendant's claim while he has represented himself has been that the dog was not deployed (perhaps because he scratched cars), not that the dog was inaccurate or unreliable. As defendant states on page two of the motion for reconsideration: "Defendant has maintained from day one that there was no drug dog deployment on 8/19/07 to the exterior of his truck parked at Harrah's Casino parking row "A" at 0130 hours a.m." Defendant does not explain how records of prior deployments would show that the dog was not deployed on the night in question.

Defendant makes the general claim that material and exculpatory evidence has been withheld by the government. Defendant also asserts generally that the government has failed to preserve potentially material evidence in bad faith. Defendant has

5

no proof to support either claim. There is no proof of what the video recordings would have shown. There is no proof that the government, as opposed to the casino, destroyed the video recordings. There is no proof that the government acted in bad faith, only defendant's assertions that alleged inconsistencies or errors in testimony amount to perjury. Defendant's theory of what occurred in this case, if proven, would amount to bad faith. But, he has not offered proof to substantiate that theory. The alleged contradictions and inconsistencies in the witnesses' testimony by themselves do not establish perjury or bad faith in this court's opinion. See U.S. v. Wolny, 133 F.3d 758, 763 (10th Cir. 1998).

Defendant claims that he has been denied uncensored copies of patrol car videos. The court has ordered that such copies be made available to defendant if they exist and if they are relevant to the events in his case. Therefore, the court has not denied this discovery to defendant. In addition, defendant has not shown that the videos were censored or that at any time they contained material or exculpatory images. Therefore, this argument for reconsideration shall be denied.

Defendant claims that the government's bad faith is proven by the presence of video evidence of the traffic stop in contrast with the absence of video evidence of the drug sniff. Defendant's suspicions here, however, do not amount to proof of bad faith. If defendant is arguing that the government had an obligation to

record the dog sniff in this case, we reject that argument. To the court's knowledge, there is no authority for that position. We note that several federal court cases have rejected a right to have police interrogation recorded. See <u>U.S. v. Owlboy</u>, 370 F.Supp.2d 946, 948-49 (D.N.D. 2005) (citing several federal court cases); <u>Martin v. Lord</u>, 378 F.Supp.2d 184, 186 n.1 (W.D.N.Y. 2005) (same). If there is no federal right to have an interrogation recorded, it follows that there is no federal right to have a dog sniff recorded on video.

Finally, defendant makes reference to a Potawatomi Tribal Police Department dispatcher record ("CAD Record: 07-08-19-004436") indicating that the drug dog was deployed to sniff defendant's vehicle at 1:32:54 a.m. on August 19, 2007 and that the dog sniff was finished at least by 1:34:44 a.m. Defendant suggests that this was too little time for a dog sniff. No proof is offered for this opinion other than an unconvincing extrapolation from the dog's training records.

<u>New evidence</u>

Defendant again makes reference to the "CAD Record" of the Potawatomi Tribal Police Department. He contends that this record and other records indicate that there were errors in the testimony of Officers Hurla and Besenyi regarding when they asked for information regarding defendant's criminal record and where they were on the night in question. Defendant also refers to Exhibit J-

7

6 which relates to a criminal history request Officer Hurla made regarding defendant on the night in question. Officer Hurla has testified that he disagrees with defendant's interpretation of Exhibit J-6. Officer Hurla seemed credible to the court. In any event, the time of a record check on defendant is not a critical fact for deciding whether the officers were telling the truth about the dog sniff. We do not believe the "new evidence" presented in defendant's motion alters the preponderance of the evidence that there was a dog sniff which provided probable cause for the car search in this case.

Defendant further notes that the "CAD Record" indicates that defendant was stopped for a "tag light" violation, while Officer Besenyi testified that defendant was stopped for failing to signal. This is immaterial because the dog sniff provided the probable cause to stop defendant regardless of what defendant or a dispatcher was told at the time of the stop. Officer Besenyi testified that he was going to stop defendant regardless of the traffic violation (Transcript of original suppression hearing, p. 25); the dog sniff provided him legal cause to do so. Moreover, video tape of the car stop (Exhibit 10) shows that Officer Besenyi referred to a failure to signal <u>and</u> a tag light violation when he spoke to defendant at the beginning of the car stop.

<u>Evidence withheld or destroyed</u>

This section of the motion for reconsideration quotes

extensively from this court's order upon his first motion for reconsideration of the motion to suppress (Doc. No. 90) and the excerpt in that order from U.S. v. Parker, 72 F.3d 1444, 1452 (10th Cir. 1995).[1]  In addition to Parker, defendant cites the Brady, Giglio and Trombetta cases to assert that his rights to Due Process have been denied.

The Tenth Circuit has summarized the standards which govern alleged Brady and Trombetta violations in U.S. v. Pearl, 324 F.3d 1210, 1215 (10th Cir. 2003):

> To establish a Brady violation, a defendant must show "1) that the prosecution suppressed evidence; 2) that the evidence was favorable to the accused; and 3) that the evidence was material." Smith v. Sec'y of N.M. Dep't of Corr., 50 F.3d 801, 824 (10th Cir. 1995) (internal quotation marks omitted).  For police destruction of evidence to rise to the level of affecting a defendant's Due Process rights under California v. Trombetta, the evidence "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."  467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984).  In addition, unlike a Brady analysis, the defendant must show that the government acted in bad faith.  Youngblood, 488 U.S. at 58, 109 S.Ct. 333.

The standard for a Giglio violation is basically the same as the standard for a Brady violation. Douglas v. Workman, 560 F.3d 1156, 1173 (10th Cir. 2009).

Defendant's proof has failed to meet these standards.  First,

---

[1] In the court's order (Doc. No. 90), there is a typographical error.  The Parker case is listed at 77 F.3d 1444 (10th Cir. 1995).  Actually, the Parker case is at 72 F.3d 1444.

9

defendant has not shown that the video evidence, assuming it ever existed, was favorable to him.  Second, there is no evidence that the government ever suppressed or destroyed video evidence.  There is evidence that surveillance cameras operate in the parking lot.  There is no evidence that the <u>government</u> destroyed the video from these cameras, as opposed to the casino.  Finally, there is no evidence of bad faith by the government in failing to make, preserve or collect video evidence.  The inconsistencies or errors in the officers' testimony which defendant has emphasized do not persuade the court that the officers or any other person connected to the prosecution has acted in bad faith.

On page 22 of his motion, defendant lists six items of evidence which he has not received.  All of these items have been the subject of more than one previous motion and more than one previous order.

Two of the items are "uncensored" video recordings from patrol car cameras.  The court has ordered the production of those items if they exist and if they are relevant to the events in this case.

One of the items is a parking lot surveillance camera recording.  Twice, the court has issued subpoenas for such recordings.  Nothing has been produced.  We believe they do not exist.

Another item mentioned by defendant is transcribed dispatch and radio transmissions.  Defendant states that he cannot

understand the transmissions unless they are transcribed. However, defendant has received a CD and a typed summary of the dispatch transmissions. The court has listened to the CD, which seems relatively clear. The court is not convinced that any additional materials of this kind, if they exist or could be produced, would be substantially beneficial to defendant.

Finally, defendant asks for additional information regarding the drug dog's performance on dates other than the date involved in this case. The court has directed that some drug dog records be supplied to defendant. But, additional records do not appear relevant to defendant's claim in the motion for reconsideration that there was no drug dog sniff.

### Legal error

The final section in defendant's motion asserts that the court committed error by permitting the tribal police officers to testify as "experts" regarding the surveillance capabilities of the parking lot cameras at the casino.

This testimony was not material to the court's decision on defendant's motion. It simply does not matter what the cameras would record, when there is no evidence that recordings favorable to defendant were suppressed by the government or left uncollected in bad faith.

### Weight of the evidence

The court has reviewed the evidence after the latest hearing

upon defendant's motion for reconsideration.  Two tribal police officers have testified credibly that there was a dog sniff. Officer Hurla actually conducted the dog sniff with the dog "Bowie" and Officer Besenyi observed the dog sniff.  A Prairie Band Potawatomi Tribal Police Department CAD document (Exhibit 11A), which is a record of dispatcher activity, makes reference to a dog sniff of defendant's vehicle.  An audio recording of dispatcher activity records Officer Hurla stating that he is deploying the drug dog.  Exhibit 11.  Officer Besenyi told defendant of the dog sniff when he conducted the traffic stop of defendant's vehicle. Exhibit 10.

To balance against this evidence, defendant has presented the following.  Defendant's standby counsel has interviewed several people listed by defendant as potential witnesses.  One of these potential witnesses (Dave Albrecht) is the general manager of the casino, although he did not work at the casino on August 19, 2007. He has told defendant's standby counsel the following:

> The casino does use video surveillance and a daily log of activity is made.  Video is kept for 12 days unless an incident report is made concerning something that appears on the video.
> When a drug dog is used on the casino property or Potawatomie Tribal Police or other law enforcement officers come onto the property, that event is normally documented in the security log that is kept.
> Mr. Albrecht's review of the security log for August 19, 2007 does not show that use of a drug dog was documented in the log for that date.
> Since he has been employed at the casino he reviews the security log daily and believes it shows with at least 90% certainty when police have been on the property

>    of the casino.
>         He has researched the records available and is
>    "pretty sure" there was not a drug dog used on the casino
>    property the night of August 19, 2007.

Defendant has also referred to his standby counsel's interview of "Rick Burns", an animal control officer in Jackson County, Kansas.  Mr. Burns said that he and his family have not been involved with drug dealing with defendant and that he does not recall discussing with other officers drug dealing by defendant.[2]

The conclusions of Mr. Albrecht are not convincing to the court for the following reasons.  First, he was not yet working at the casino on August 19, 2007.  Second, Officers Besenyi and Hurla testified that the policy of asking law enforcement officers to alert the casino when a drug dog is being used or other law enforcement activity is being conducted was implemented some time after August 19, 2007.  Finally, Mr. Albrecht concluded only that he was "pretty sure" there was no drug dog used on the night in

---

[2] Defendant's standby counsel recounted his interviews with these and other persons to the court under oath during an ex parte hearing on May 13, 2009.  During the last hearing upon the motion for reconsideration there was some discussion regarding the hearsay nature of these statements when defendant made reference to them. Ultimately, the government's objections to the statements were either denied or withdrawn.  We would note that "hearsay evidence is admissible at suppression hearings."  U.S. v. Sanchez, 555 F.3d 910, 922 (10th Cir. 2009).  This "hearsay evidence" was presented differently than most hearsay evidence in a suppression hearing. And, as the court commented during the last hearing, this evidence was not presented under oath (at least to standby counsel) and was never subject to cross-examination.  Nevertheless, in spite of the somewhat unusual means of presenting the evidence, the court has decided to weigh it like the sworn testimony that was presented to the court.

13

question.

The "testimony" of Mr. Burns is not terribly material to the issues before the court. At the original suppression hearing, Officers Besenyi and Hurla stated that they had received information from an animal control officer that defendant was involved with drugs and frequented the casino. This supposedly accounted for their decision to do the dog sniff. At the hearing upon the motion for reconsideration, both officers said that the information from Burns actually came to them through another officer - Officer Swisher. The law does not require reasonable suspicion to perform a dog sniff of a vehicle parked in a public parking lot. See Illinois v. Caballes, 543 U.S. 405 (2005); U.S. v. Ramirez, 342 F.3d 1210, 1213 (10th Cir. 2003) ("dog sniffs are not 'searches' within the meaning of the Fourth Amendment"). The issue raised by defendant is whether, not why, there was a dog sniff. The "testimony" of Burns does not lead the court to disbelieve the testimony of Besenyi and Hurla that the dog sniff did indeed happen. His statement that he did not "recall" discussing defendant with other officers does not persuade the court that Officers Besenyi and Hurla's testimony should be rejected.

Defendant further suggests that the CAD report does not show that Besenyi was with Hurla at the time of the dog deployment. We reject this interpretation. Officer Hurla testified that it is not

unusual for an officer to fail to report his presence when he is assisting or attending another officer's activity. The question raised by defendant may just as easily be turned against the accuracy of the CAD report as opposed to the accuracy of Officer Besenyi's testimony.

Finally, defendant has stated that he would testify that he left the casino around 1:27 a.m. and walked to his vehicle, and that he did not see Officer Hurla, Officer Besenyi or "Bowie." As stated before, we think this merely raises an issue of whether the timeliness of the witnesses is exactly correct. In this respect, we note the testimony of the officers that the dispatcher notes are not exactly accurate as to the time of events because it may take some time for a dispatcher to record an event in the dispatcher's notes.

### Conclusion

In conclusion, after a careful consideration of this matter, the court holds that the preponderance of the evidence clearly supports a finding that the drug dog "Bowie" did alert to defendant's vehicle, providing probable cause to search the vehicle. Therefore, the court shall deny defendant's motion for reconsideration.

**IT IS SO ORDERED.**

Dated this 22nd day of May, 2009 at Topeka, Kansas.

                                         s/Richard D. Rogers
                                         United States District Judge